## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| ARTIS C. CARROLL, JR. | : CIVIL ACTION |
| | : |
| v. | : NO. 19-2059 |
| | : |
| JANELLE MADARA | : |

### MEMORANDUM

**KEARNEY, J.**                                                                                     **August 19, 2019**

A citizen sentenced by a Pennsylvania state judge to prison followed by parole with conditions must timely complete the conditions. Pennsylvania police authorities may otherwise obtain a bench warrant and arrest him for violating parole followed by a parole violation hearing within a reasonable time following his loss of liberty. The Commonwealth requires its courts rule on the parole violation within a reasonable time of the conduct. When a parole officer issues the violation notice within a day of the violation and the parole revocation hearing occurs within five weeks of a bench warrant issued by a state court judge leading to the parolee's arrest, the parolee cannot claim his parole officer violated his right to due process by delaying his revocation hearing. He also cannot claim a parole revocation hearing held by a state court judge allows him to sue his parole officer for violating his double jeopardy protections. We grant the parole officer's motion to dismiss the former inmate's *pro se* claims with prejudice.

### I.      *Pro se* allegations and the public record.[1]

Pennsylvania officials released Artis C. Carroll, Jr. from prison in October 2016 "after [he] serv[ed] some 'back time' due to a violation."[2] He remained on parole with his term "set to expire at the end of the day on November 30[,] 2016."[3] The state court's parole conditions included fifty hours of community service.[4]      Janelle Madara served as Mr. Carroll's parole officer.

Notwithstanding "the short period of time to find and complete [fifty] hours of community service[,] [Officer Madara] still made him do it."[5] As the condition required fifty hours served by November 30, 2016, he could not violate the condition until after November 30, 2016. Filing a violation notice before the parole term expired (or at least before the last two days of parole) is not possible.

Mr. Carroll alleges Officer Madara "knew [of] the violation and the violator well in advance, but she waited until after his term of parole expired to file the violation."[6] Officer Madara "filed the violation approximately 12 hours after his term of parole expired."[7] This technical parole violation did not require immediate detention due to a safety concern for Mr. Carroll or the community.

For unplead reasons, the Commonwealth did not promptly move forward on arresting Mr. Carroll on the parole violation. Mr. Carroll alleges he "wanted to know" the date of his parole violation hearing but Officer Madara "wouldn't tell him."[8] Mr. Carroll alleges a bench warrant issued in April or May 2017 "issued by [Officer] Madara."[9] The public record corrects Mr. Carroll's *pro se* recollection confirming a state court judge signed the bench warrant on May 17, 2017.[10] The state court held a hearing on June 22, 2017 resulting in the state court judge finding he violated parole. The Commonwealth did not release him "until on or about June 29, 2017 when he maxed out or his sentence was terminated."[11]

Mr. Carroll blames Officer Madara, who, he claims, "denied him a speedy hearing" because she "didn't schedule the hearing as speedily as possible, as [d]ue process requires and [she] should've filed the violation before the parole expired or not file it at all."[12] Mr. Carroll sues Officer Madara in her individual capacity. He alleges Officer Madara (1) violated his rights under

2

the Due Process Clause of the Fourteenth Amendment, and (2) violated his rights under the double jeopardy clause of the Fifth Amendment.[13]

## II. Analysis.

Officer Madara moves to dismiss Mr. Carroll's claims.[14] Mr. Carroll has not opposed the motion. Mr. Carroll has not stated a claim. We grant Officer Madara's motion.

### A. Mr. Carroll cannot plead Officer Madara denied him due process.

Officer Madara argues we must dismiss Mr. Carroll's due process claim because he "has not pled facts to support that his due process rights were violated because of an unreasonable delay in his parole revocation hearing for which Officer Madara] was responsible."[15] Officer Madara argues Mr. Carroll did not endure an unreasonable delay in violation of his due process rights. She also emphasizes her lack of personal involvement in delaying the scheduling of hearings, which Mr. Carroll argues caused the alleged injury. "[A]ll orders relating to scheduling the hearings related to [Mr. Carroll's] defiant trespass charge and subsequent parole violation hearings[] were entered . . . by Court of Common Pleas Judges," she argues.[16]

#### *Officer Madara timely issued the violation.*

Mr. Carroll does not demonstrate how Officer Madara's "wait[ing] until after his term of parole expired to file the violation" deprived him due process.[17] In *Schepp v. Fremont Cty., Wyoming*, the United States Court of Appeals for the Tenth Circuit found "[m]any states provide that revocation proceedings may commence within a reasonable time after the probation period terminates," and "[t]hese schemes have not been held to violate probationers' constitutional due process rights."[18] The court of appeals found the "[f]ailure to commence revocation proceedings before the end of formal probation does not, in itself, create a significant likelihood that probationers' constitutional rights will be violated."[19]

3

Pennsylvania law permits "a sentence for a violation of the terms of probation [to] be imposed after the expiration of the probationary period if the revocation is based on a violation which occurred within the probationary period," so long as the probation is revoked and the sentence is "imposed within a reasonable time after the expiration of the probationary period."[20]

The Commonwealth charged Mr. Carroll for failing to meet the terms of his parole requiring fifty hours of community service. He admittedly did not serve fifty hours of community service. His present reasons for failing to do so are not before us. Officer Madara issued the violation on the first possible day. This notice is timely.

### *Five weeks between warrant and hearing does not violate due process.*

Mr. Carroll challenges the delay between Officer Madara's violation notice on December 1, 2016 and his June 22, 2017 revocation hearing. He claims this delay violates his right to due process even though the Commonwealth did not arrest him until approximately five weeks before his revocation hearing. He misunderstands the nature of due process which focuses on the time after the parole violator is placed in custody.

Parole "[r]evocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions."[21] Notwithstanding a parolee's highly conditional liberty, our Supreme Court in *Morrissey v. Brewer* held the parolee's "liberty is valuable and must be seen as within the protection of the Fourteenth Amendment."[22] The Court in *Morrissey* held due process requires a parolee receive "an effective but informal hearing" at "two important stages in the typical process of parole revocation."[23]

The first important stage is an initial "inquiry . . . in the nature of a 'preliminary hearing' to determine whether there is probable cause or reasonable ground to believe that the arrested

4

parolee has committed acts that would constitute a violation of parole conditions."[24] The second important stage, the "[r]evocation [h]earing," "must lead to a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation."[25] The parolee must have an opportunity at the revocation hearing "to be heard and to show, if he can, that he did not violate the conditions, or, if he did, that circumstances in mitigation suggest that the violation does not warrant revocation. The revocation hearing must be tendered within a reasonable time after the parolee is taken into custody."[26]

Following *Morrissey*, the Supreme Court in *Moody v. Daggett* held "the loss of liberty as a parole violator does not occur until the parolee is taken into custody under the warrant."[27] A parolee "has been deprived of no constitutionally protected rights simply by issuance of a parole violator warrant. The Commission therefore has no constitutional duty to provide petitioner an adversary parole hearing until he is taken into custody as a parole violator by execution of the warrant."[28] Our Court of Appeals reaffirmed this principle last year writing, "the duty to provide a hearing arises only when the parolee 'is taken into custody as a parole violator by execution of the warrant,' because 'execution of the warrant and [consequent] custody under that warrant [is] the operative event triggering any loss of liberty attendant upon parole revocation.'"[29]

Mr. Carroll's emphasis on the five-to-six-month span of time between his parole violation and the hearing is therefore misplaced, as "[t]he revocation hearing must be tendered within a reasonable time *after the parolee is taken into custody*."[30] Mr. Carroll alleges he "was picked up on a bench warrant issued by [Officer] Madara" in April or May 2017,[31] not when she first issued the technical parole violation on December 1, 2016. The record confirms his arrest on May 17, 2017. The state court provided a hearing on June 22, 2017, less than five weeks after being taken into custody.[32] This span of time does not run afoul of due process. In *Morrissey*, the Supreme

5

Court instructed "[a] lapse of two months, as respondents suggest occurs in some cases, would not appear to be unreasonable."[33]

### *There are no facts of Officer Madara's personal involvement in the delay.*

Even assuming we could find less than five weeks between arrest and revocation hearing violates due process, Mr. Carroll fails to plead specific facts demonstrating Officer Madara's personal involvement in the alleged due process violation. He alleges Officer Madara issued a bench warrant but does not allege how Officer Madara personally had the authority to schedule parole revocation hearings, a responsibility Pennsylvania law assigns to the Parole Board.[34] Officer Madara does not issue warrants. The public record confirms the state judge issued the warrant. Mr. Carroll cannot plead facts showing Officer Madara's personal involvement.

### B. Mr. Carroll fails to plead Officer Madara subjected him to double jeopardy.

We must also find Mr. Carroll fails to state a claim for violation of the double jeopardy clause which "protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense."[35] But it does not apply to parole revocation. In *United States ex rel. McClure v. Patton*, Judge Broderick explained parole revocation does not run afoul of the double jeopardy clause:

[t]he only "punishment" imposed on a defendant who has been paroled from prison is that imposed by his original sentence, upon his original conviction. The Board of Probation and Parole does not increase or decrease that punishment; it merely determines when circumstances are appropriate for convicted persons to serve their sentences without continued physical custody. Parole does not withdraw the original sentence, but changes the locale and conditions under which that sentence will be served. It is well-settled that the revocation of parole and recommitment to prison does not constitute a second sentence or punishment in violation of the double jeopardy clause.[36]

6

Mr. Carroll does not articulate how the apparently routine revocation of his parole on the

first day after the violation ran afoul of the double jeopardy clause. But even if Mr. Carroll could

articulate a potential double jeopardy theory, he does not plead sufficient facts demonstrating

Officer Madara's personal involvement in the alleged constitutional wrongs. Mr. Carroll does not

plead Officer Madara's scheduling authority. Nor does he plead Officer Madera's personal

involvement in the decision to revoke his parole.

## III.   Conclusion.

In the accompanying Order, we grant Officer Madara's motion to dismiss as Mr. Carroll

does not plead Officer Madara violated his right to due process or subjected him to double

punishment in violation of the double jeopardy clause.

---

¹ We consider, in addition to Mr. Carroll's fact allegations, the public dockets attached to Defendants' motion to dismiss. "It is well-settled that a court may look beyond the complaint in ruling on a motion to dismiss and consider 'matters of public record, including court files and records, documents referenced in the complaint, and documents essential to a plaintiff's claims and attached to either the plaintiff's complaint or the moving defendants' Rule 12(b)(6) motions to dismiss.'" *Riffin v. Consol. Rail Corp.*, 363 F. Supp. 3d 569, 574 n.2 (E.D. Pa. 2019) (quoting *Gorton v. Air & Liquid Sys. Corp.*, 303 F.Supp.3d 278, 303 (M.D. Pa. 2018)), *aff'd*, No. 19-1414, 2019 WL 3072201 (3d Cir. July 15, 2019).

² ECF Doc. No. 2 at 36 ¶ 1. When citing Mr. Carroll's complaint, we refer to Mr. Carroll's hand-written pagination.

³ *Id.* at 36 ¶ 2.

⁴ *Id.*

⁵ *Id.* at 36 ¶ 3.

⁶ *Id.*

[7] *Id.* at 37 ¶ 4.

[8] *Id.*

[9] *Id.* at 37 ¶ 6.

[10] ECF Doc. No. 13 at 52.

[11] ECF Doc. No. 2 at 37 ¶ 6.

[12] *Id.* at 36 ¶ 3, 38 ¶ 7.

[13] *Id.* at 36 ¶ 1.

[14] When considering a motion to dismiss "[w]e accept as true all allegations in the plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and we construe them in a light most favorable to the non-movant." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)). "[T]he Court must liberally construe a *pro se* litigant's pleadings." *Turner v. Prince George's Cty. Pub. Sch.*, No. 16-4524, 2017 WL 5515956, at *1 n.1 (E.D. Pa. Mar. 31, 2017), *aff'd*, 694 F. App'x 64 (3d Cir. 2017). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Our Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679).

[15] ECF Doc. No. 13 at 8.

[16] *Id.* at 7–8.

[17] ECF Doc. No. 2 at 36 ¶ 3.

[18] *Schepp v. Fremont Cty., Wyo.*, 900 F.2d 1448, 1455 (10th Cir. 1990).

[19] *Id.*

[20] *Com. v. Wright*, 116 A.3d 133, 137 (Pa. Super. Ct. 2015).

[21] *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972).

[22] *Id.* at 482.

[23] *Id.* at 485.

[24] *Id.*

[25] *Id.* at 487–88.

[26] *Id.* at 488.

[27] *Moody v. Daggett*, 429 U.S. 78, 87 (1976).

[28] *Id.* at 89.

[29] *Singleton v. Superintendent Camp Hill SCI*, 747 F. App'x 89, 93 (3d Cir. 2018) (alterations in original) (quoting *Moody*, 429 U.S. at 87).

[30] *Morrissey*, 408 U.S. at 488 (emphasis added).

[31] ECF Doc. No. 2 at 37 ¶ 6.

[32] *Id.*

[33] *Morrissey*, 408 U.S. at 488.

[34] *See* 37 Pa. Code § 71.2(9) ("If the examiner finds probable cause and is of the opinion that a violation hearing is warranted, the examiner shall initiate the scheduling of a violation hearing, if desired by the parolee or by the Board's representative to resolve remaining contested relevant facts.").

[35] *Stiver v. Meko*, 130 F.3d 574, 578 (3d Cir. 1997) (quoting *United States v. Halper*, 490 U.S. 435, 440 (1989)).

[36] *U.S. ex rel. McClure v. Patton*, 624 F. Supp. 56, 60 (E.D. Pa. 1985) (internal citation omitted).